# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| CAROLYN C. PHILLIPS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 7:08CV10016 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| WYTHE COUNTY COMMUNITY HOSPITAL, ET AL., | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*Mark A. Black, Brumberg, Mackey & Wall, P.L.C., Roanoke, Virginia, for Plaintiffs; Joshua F. P. Long, Woods Rogers PLC, Roanoke, Virginia, for Defendants WCCH Holdings and Michael D. Cole; Jason D. Fisher, Waller Lansden Dortch & Davis, LLP, Nashville, Tennessee, for Defendants Wythe County Community Hospital, LLC, and Lifepoint Hospitals, Inc.*

The plaintiffs, retired employees of a hospital which later sold its assets to a successor, seek statutory penalties for alleged violations of ERISA and COBRA. I find that the ERISA claim for statutory penalties is time barred, but that the COBRA claim cannot be dismissed at this stage on the pleadings as to the former employer.

I

The facts as alleged in the Complaint, which I must accept as true for the purposes of a motion to dismiss, are as follows. The eight plaintiffs in this case are all former employees of Wythe County Community Hospital (the "Hospital").

Between 2001 and 2003, each of the plaintiffs elected early retirement that included, among other benefits, group health insurance coverage until age 65. The Hospital thereafter, on May 31, 2005, sold its operating assets to affiliates of LifePoint Hospitals, Inc. ("LifePoint"), and on that date the Hospital terminated its health benefit plan (the "Plan"). The eight plaintiffs were then, without prior notice, no longer covered by the Plan.

WCCH Holdings ("Holdings"), the successor entity to the Hospital, agreed to purchase new health insurance coverage administered by Anthem Blue Cross and Blue Shield ("Anthem") for retirees through age 65, but the plaintiffs did not have any health insurance coverage for a two-month "gap period" before the Anthem coverage started. Also, "after the Anthem coverage supposedly became effective, . . . the WCCH Defendants allowed the Anthem policy to terminate during several significant periods of time for failure to make premium payments." (Compl. ¶ 18.)

During the two-month "gap period," the plaintiffs "could not pay their health care providers or advanced personal funds to pay for medical treatment or prescriptions." (*Id.* ¶ 23.) The plaintiffs have been "reimbursed, in part or in full" for these expenses. (*Id.*) But the plaintiffs also experienced "financial hardship" from advancing personal funds and "severe emotional distress" from their uncertainty as to the status of their health insurance coverage. (*Id.* ¶¶ 24-26.) At the time the

Hospital terminated the Plan and during the subsequent gap period, defendant Michael D. Cole, a hospital administrator, allegedly misrepresented that the retirees' health insurance coverage would continue without interruption after May 31, 2005.

On May 9, 2008, the plaintiffs filed their Complaint asserting four claims arising out of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 1999 & Supp. 2008), and amendments under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C.A. § 1161-1169 (West 1999 & Supp. 2008), as follows: (1) an ERISA claim for equitable restitution for breach of fiduciary duty by misrepresenting continuance of medical coverage under the Plan (Count I); (2) a claim for statutory penalties for violations of ERISA disclosure and reporting requirements (Count II); (3) a claim for statutory penalties for failure to notify plaintiffs of their right to continuation coverage under COBRA (Count III); and (4) a breach of contract claim under Virginia law (Count IV). These claims were all asserted against both the former employer (Holdings) and a former hospital administrator, Michael D. Cole, as well as the new owner (LifePoint) and Wythe County Community Hospital, LLC, the entity by which LifePoint operates the hospital assets (together, "LifePoint defendants").[1]

---

[1] The Complaint also names as a defendant Wythe County Community Hospital, but the parties apparently agree that this entity is simply the predecessor to Holdings and has no separate legal existence at this time.

- 3 -

I previously approved an agreed order to dismiss Counts I, II, and IV as to the LifePoint defendants. The plaintiffs have since agreed to dismiss Count IV, the breach of contract claim, as to all defendants, and to dismiss all counts as to Wythe-Bland Community Hospital, LLC, a defendant that has never been served, and is apparently not involved. The plaintiffs maintain their claims for failure to comply with COBRA notification requirements, Count III, against the remaining defendants. Counts I and II also remain against defendants Holdings and Cole.

The defendants now move to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) on several grounds. The issues have been fully briefed and argued, and are ripe for decision.

"[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Additionally, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added). As the *Twombly* court explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65.

II

As to Count I, the plaintiffs allege that the "WCCH Defendants" (presumably Holdings and Michael D. Cole) "misrepresented to the Early Retiree Claimants that the WCCH Defendants would continue to maintain their health insurance coverage, notwithstanding the termination of the Plan." (Compl. ¶ 33.) They aver that these misrepresentations violated 29 U.S.C.A. § 1132(a)(3) and seek equitable relief, including full restitution, under § 1132(a)(3)(B), and reasonable attorneys fees and costs under § 1132(g).

In order to prevail on a claim for equitable restitution under § 1132(a)(3), a plaintiff must show that "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir. 2003) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). The plaintiffs make no such allegation in the Complaint; rather, the Complaint states that the plaintiffs have all been reimbursed "in part or in full" for the medical expenses they paid for while not covered by any health insurance benefit

- 5 -

plan. (Compl. ¶ 23.) In their reply brief, the plaintiffs suggest that "funds for reimbursement are in the possession of WCCH Holdings, presumably segregated and identifiable from its other funds, and available for reimbursement to the Early Retiree Claimants in the amounts advanced to the various health care providers." (Pls.' Mem. in Opp'n to Mot. to Dismiss 5.) When questioned during oral argument, however, the plaintiffs conceded that they do not have a valid claim for equitable restitution. Count I will therefore be dismissed as to both Holdings and Michael D. Cole.

III

In Count II, the plaintiffs bring claims under 29 U.S.C.A. § 1132(c)(1) against Holdings and Michael D. Cole for a refusal to supply requested information as required by § 1132(c)(1)(B). In Count III, the plaintiffs bring different claims under § 1132(c)(1) against Holdings, Cole, and the LifePoint defendants for failing to notify them of their rights under COBRA as required by § 1166(a)(4) and § 1132(c)(1)(A). Section 1132(c)(1) provides that a plan administrator is liable up to $100 for each day that it is late responding to a request for plan documents and for each day that it fails to meet its COBRA notification responsibilities. A participant or beneficiary has standing to bring an action under § 1132(a)(1)(A) for the relief provided in § 1132(c).

Neither ERISA nor the COBRA amendments contain an express statute of limitations applicable to these claims, so this court is required to look to the most analogous statute of limitations under state law. *See, e.g.*, *White v. Sun Life Assurance Co. of Canada*, 488 F.3d 240, 245 (4th Cir. 2007). The plaintiffs argue that the most analogous claim under state law is a contract claim, for which there is a five year statute of limitations in Virginia.[2] Although they seek statutory penalties under the ERISA and COBRA statutes, the plaintiffs insist that these are most like contract claims because the plan contains language almost identical to the statutes requiring notification under COBRA and document disclosure under ERISA.

But the plaintiffs seek statutory penalties, not breach of contract damages or other remedies. The most analogous state cause of action would be under a state civil penalty or forfeiture statute, not a breach of contract claim as the plaintiffs argue. *See Underwood v. Fluor Daniel, Inc.*, No. 95-3036, 1997 WL 33123, at *4-5 (4th Cir. Jan. 28, 1997) (noting that in South Carolina, the applicable statute of limitations for a COBRA claim under § 1132(c)(1) would be the one-year statute of limitations for actions upon a statute for a penalty or forfeiture); *Bryant v. Food Lion Inc.*, 100 F.

---

[2] The plaintiffs also attempt to frame their claims in Count II as claims for breach of fiduciary duty, in which case the applicable statute of limitations would be either three or six years. 29 U.S.C.A. § 1113. But breach of fiduciary duty claims arise under § 1132(a)(2) and give rise to liability only to the plan, not to individual beneficiaries. *See* 29 U.S.C.A. § 1109(a).

- 7 -

Supp. 2d 346, 376-77 (D.S.C. 2000) (same); *see also Iverson v. Ingersoll-Rand Co.*, 125 F. App'x 73, 76-77 (8th Cir. 2004) (unpublished) (holding that the most analogous state cause of action to an ERISA claim under § 1132(c)(1) was an action upon a statute for a penalty or forfeiture); *but see Stone v. Travelers Corp.*, 58 F.3d 434, 439 (9th Cir. 1995) (finding that the $100 per day fine permitted under § 1132(c) is not penal, and applying California's three-year statute of limitation for an action upon a liability created by statute, other than a penalty of forfeiture); *Hatteberg v. Red Adair Co. Inc. Employees' Profit Sharing Plan*, 79 F. App'x 709, 715 (5th Cir. 2003) (unpublished) (applying the Texas two-year statute of limitations for breach of fiduciary duty).

Because Virginia does not have a specific statute of limitations for civil penalty or forfeiture statutes, Virginia's general two-year statute of limitation applies. *See* Va. Code § 8.01-248 (2007) (providing a two-year statute of limitation for personal actions accruing on or after July 1, 1995, "for which no limitation is otherwise prescribed"). Applying this two-year "catchall" statute of limitations would be consistent with the conclusion of another district court in this circuit. *See Middleton v. Russell Group, Ltd.*, 924 F. Supp. 48, 49-52 (M.D.N.C. 1996) (reviewing the case law on the appropriate statute of limitations for a claim under § 1132(c), rejecting the statute of limitations for either breach of contract claims or civil forfeiture, and

applying instead North Carolina's three-year statute of limitations for actions based on a liability created by state or federal statute when there is no limitation expressly mentioned in the statute) *contra United Food & Commercial Workers Local 204 v. Harris-Teeter Super Markets, Inc.*, 716 F. Supp. 1551, 1560 (W.D.N.C. 1989) (concluding that a § 1132(c) claim was most analogous to a claim for breach of contract). In an unpublished case, the Fourth Circuit expressed approval of using a state catchall statute of limitations for such claims under ERISA and COBRA. *Harvey v. Mingo Logan Coal Co.*, 104 F. App'x 838, 840 & n.4 (4th Cir. 2004) (unpublished) (affirming the district court's application of West Virginia's one-year statute of limitations governing unfair insurance practices, but noting that even if that was not the most analogous state law claim, West Virginia's one-year catchall limitation would apply).

The plaintiffs' claims under Counts II and III accrued at different times. As to Count II, the most recent violation of § 1132(c) alleged by the plaintiffs arises out of the defendants' alleged failure to timely respond to plaintiffs' March 1, 2006, request for plan-related documents. This cause of action accrued thirty days after the request (March 31, 2006), *see* § 1132(c)(1)(B), and expired two years after that date (March 31, 2008). The plaintiffs filed this suit on May 9, 2008, more than one month after

the claim was time barred by the applicable two-year statute of limitations. Therefore, Count II will be dismissed as to Holdings and Michael D. Cole.

As to Count III, the accrual date is more difficult to determine because the plaintiffs have adjusted their theory of liability throughout the briefing and argument of this case. COBRA requires that an employer provide an employee with the option of electing continuation coverage under the same terms as the employer's health plan after some qualifying event, as defined in § 1163, which would otherwise end the employee's health insurance coverage. Termination of employment is one such qualifying event. § 1163(2). The continuation coverage generally must last for at least eighteen months. § 1162(2)(A)(i). The employer may require the employee to pay the premiums during that period. The plan administrator is obligated to notify the employee of his or her option to elect continuation coverage no later than forty-four days after termination of employment.[3]

The plaintiffs originally contended that COBRA notice was due to them upon termination of the plan; however, COBRA continuation coverage is not required when a plan terminates since plan termination is not a "qualifying event" under

---

[3] *See* § 1166(a)(4). The employer has thirty days after a qualifying event to notify the plan administrator, and the administrator then has fourteen more days to notify any beneficiaries and explain to them their rights under COBRA. *See* §§ 1166(a)(2), (c); *Underwood*, 1997 WL 33123, at *3.

- 10 -

§ 1163. *See also* § 1162(2)(B) (stating that COBRA continuation coverage is not required to extend beyond the date on which the employer ceases to provide any group health plan to any employee). Accordingly, there is no attendant notification requirement upon plan termination. *See* § 1166(a)(4).

The plaintiffs' new theory is that notice of their option to elect COBRA continuation coverage was due upon retirement (a form of termination of employment, a qualifying event under § 1163(2)). Defendants Holdings and Michael D. Cole attach a copy of the Wythe County Community Hospital Medical Care Plan Plan Document to their Motion to Dismiss.[4] This Plan document lists the benefits afforded to both employees and retirees. The differences in benefits are significant. For instance, retirees have different deductibles, out-of-pocket limits, and co-payments than employees. Although the plaintiffs received gratuitous health care coverage through their retirement packages, they correctly contend that they were entitled to notification of their rights under COBRA upon retirement because their retiree coverage was not identical to the coverage that they had been receiving previously as employees.[5] In other words, they should have been given the

---

[4] The parties agree that the court may consider the contents of the Plan document without converting the Motion to Dismiss into a motion for summary judgement, since the plaintiffs refer to the Plan in the Complaint.

[5] Retirement is a "qualifying event" if it "would result in the loss of coverage" without the provision of continuation coverage. § 1163; *see also* §§ 1161(a), 1165(a)(1)(A).

- 11 -

opportunity to elect to pay for COBRA continuation coverage identical to their employee coverage for eighteen months rather than receive retiree coverage until age sixty-five with a different set of benefits.

The plaintiffs' claims would normally accrue forty-five days after the qualifying event of retirement, *see Bryant*, 100 F. Supp. 2d at 377, but they add another twist—in their most recent brief they allege that they did not know all of the relevant facts entitling them to COBRA continuation coverage upon retirement. Specifically, because they had not received certain plan documents upon retirement, the plaintiffs allege that they did not know that their retiree coverage differed from their employee coverage.

The federal discovery rule most likely applies,[6] in which case the statute of

---

Under the Treasury regulations, "to lose coverage means to cease to be covered under the same terms and conditions as in effect immediately before the qualifying event." 26 C.F.R. § 54.4980B-4, A-1(c).

[6] Virginia does not normally employ the discovery rule, but under federal tolling principles, the discovery rule would apply in this case. *See Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983) (applying a Virginia statute of limitations where there was no federal limitation provided in a non-ERISA case, but finding that "the district court correctly determined that the time when a cause of action accrues is governed by federal, not state, law" and applying the federal discovery rule); *Bryant*, 100 F. Supp. 2d at 377 n.140 (noting that although state law governs the statute of limitations for a COBRA claim under § 1132(c)(1), federal law governs the accrual date); *Mich. United Food & Commercial Workers Unions v. Muir Co.*, 992 F.2d 594, 597-98 (6th Cir. 1993) (holding that the federal discovery rule applies in ERISA employer contribution cases); *but see Sheet Metal Workers, Local 19 v. 2300 Group, Inc.*, 949 F.2d 1274, 1281-82 (3d Cir. 1991) (applying the discovery rule in an ERISA case based on Pennsylvania tolling principles); *Burton v. Banta Global*

limitations would not begin to run until the plaintiffs discovered, or by the exercise of due diligence should have discovered, the facts forming the basis of their causes of action. *Blanck*, 707 F.2d at 819. The plaintiffs knew that they were retiring and therefore were no longer employed by the Hospital. But I cannot decide based on the pleadings alone whether the plaintiffs knew or should have known that their retiree health coverage differed from their previous coverage as employees. Rather than deciding this issue on a motion to dismiss, it would be more appropriately resolved on a motion for summary judgment, if the material facts are not in dispute.[7]

---

*Turnkey Ltd.*, 170 F. App'x 918, 922 (5th Cir. 2006) (unpublished) (applying the discovery rule in an ERISA case based on Texas insurance law); *see also Hamilton v. 1st Source Bank*, 928 F.2d 86 (4th Cir. 1990) (en banc) (rejecting the application of the federal discovery rule to claims under the Age Discrimination in Employment Act based on the language of the statute).

[7] The plaintiffs also argue that the statute of limitations does not begin to run until COBRA notice is given—that the failure to give notice is a continuing violation—but none of the cases that the plaintiffs cite support this contention. Indeed, the case law supports the conclusion that a cause of action under § 1132(c)(1)(A) for failure to comply with COBRA notification requirements normally accrues forty-five days after the qualifying event. *See Piercefield v. Int'l Truck & Engine Corp.*, No. 1:05-cv-1873-DFH-WTL, 2006 WL 2263985, at *2-3 (S.D. Ind. Aug. 7, 2006) (holding that a COBRA notice violation is not continuing); *Bryant*, 100 F. Supp. 2d at 377 (concluding that the accrual date for a COBRA notice violation is "at the most the forty-fifth day after the participant is terminated").

IV

Although I cannot resolve Count III based on the statute of limitations at this time, that count will be dismissed as to defendants Michael D. Cole, LifePoint Hospitals, Inc., and Wythe County Community Hospital, LLC. A cause of action under § 1132(c) may be brought only against the plan administrator. ERISA defines "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C.A. § 1002(16)(A)(i). The Plan document specifically designates Wythe County Community Hospital as the plan administrator. The LifePoint defendants are not and never have been administrators of the Plan. Michael D. Cole signed the Plan document on July 27, 2000, above the line designated for the plan administrator, but the terms of the Plan document just above his signature make it clear that he was signing as a representative of the employer, the Hospital. The only person or entity specifically designated as a plan administrator is the Hospital (now WCCH Holdings), so Count III must be dismissed as to all other defendants.[8]

---

[8] The fact that Michael D. Cole is not specifically designated as an administrator under the terms of the Plan document serves as an alternative ground for dismissal of Count II as to defendant Cole.

- 14 -

V

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. At the request of the plaintiffs, all claims against Wythe-Bland Community Hospital, LLC, are DISMISSED without prejudice;

2. At the request of the plaintiffs, Count IV of the Complaint is DISMISSED;

3. The Motion to Dismiss by defendants WCCH Holdings and Michael D. Cole (#14) is GRANTED in part and DENIED in part;

4. All claims against Michael D. Cole are DISMISSED;

5. Counts I and II of the Complaint are DISMISSED;

6. The Motion to Dismiss as to Count III is DENIED, and that claim remains against WCCH Holdings; and

7. The Motion to Dismiss by defendants Wythe County Community Hospital, LLC, and LifePoint Hospitals, Inc., (#41) is GRANTED, and all claims against said defendants are DISMISSED.

       ENTER: December 22, 2008

       /s/ JAMES P. JONES
       Chief United States District Judge